# Richmond

## CITY OF RICHMOND v. LYNN PONTIAC, INCORPORATED.

November 22, 1954.

Record No. 4273.

Present, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*J. Elliott Drinard* and *John P. McGuire, Jr.,* for the plaintiff in error.

*Richard C. L. Moncure* and *Meade T. Spicer, Jr.,* for the defendant in error.

Spratley, J., delivered the opinion of the court.

This is a proceeding instituted by Lynn Pontiac, Incorporated, hereinafter referred to as the Corporation, for the correction of alleged erroneous assessments of license taxes for the years 1951 and 1952 by the City of Richmond, hereinafter referred to as the City, and for refund of taxes paid by it under the said assessments. From an order granting relief, and a refund of a portion of the taxes paid, the City obtained a writ of error.

The material facts are without dispute. A correct determination depends upon the construction and application of various sections of Article 4 of Chapter 10 of the Code of the City of Richmond of 1937, as amended by an ordinance approved December 26th, 1950, effective January 1st, 1951.

During 1950, and for many years prior thereto, Lynn Pontiac, Incorporated, was engaged in the business of selling both new and used motor vehicles at 828 Hull Street, in the City of Richmond, Virginia. For the year 1950, it was issued a retail merchant's license under Section 10.254(a) of the Richmond City Code of 1937, as amended in December 1947, and paid thereon a tax of $20, plus thirty-four hundredths of one per centum of the gross receipts of its business in excess of $52,941 during the year 1949 at that location.

In January, 1951, the Corporation moved its used car sales business across the street to 817 Hull Street, and in February, 1952, it moved a part of its used car business to 1428 Hull Street. No used cars were offered for sale at 828 Hull Street after January, 1951. For the year 1951, the Corporation was assessed under Section 10-84 of the City Code, as amended in 1950, the sum of $2,927.49, as a "Retail Merchant" at 828 Hull Street, that sum being $20, plus thirty-four hundredths of one per centum of $855,-143.45, the gross receipts of its business in 1950 conducted at that location. It was also assessed a license tax for 1951, at 817 Hull Street, under the classification "Used Car Lot,"

$200, that being the minimum entry fee on estimated sales in 1951 of less than $52,941, under Section 10-87(b). In March, 1952, after an audit by the City, an additional assessment of 1951 license tax in the amount of $494.90 was made against the Corporation as a "Used Car Dealer" at 817 Hull Street. The City made this assessment upon the Corporation as a beginner in business in 1951 at 817 Hull Street, and used its 1951 gross receipts at that location as the basis to compute the tax. Section 10-122 of the City Code. The State of Virginia also made an additional assessment of $297, based upon the same audit and receipts. Both assessments of the City were paid, with interest of $2.47 on the additional amount. The State assessment was abated, because the State Tax Commissioner held that, under the State statutes, the Corporation was not a beginner in business in 1951 at 817 Hull Street, in that the business there done was merely a continuation of the used car business of the Corporation in a different location, as distinguished from the establishment of a business, in addition to that formerly conducted by the Corporation.

For the year 1952, the City assessed the Corporation, under the classification of "Retail Merchant," at 828 Hull Street, the sum of $1,903.42 on gross receipts in 1951 of $553,946, under Section 10-84; and under the classification "Used Car Lot" at 817 Hull Street, the amount of $724.36 on gross receipts of $207,164 under Section 10-87(b). The City further assessed the Corporation an additional license tax of $200, based upon estimated sales of $52,941 at 1428 Hull Street, under the classification "Used Car Sales," under Section 10-87(b).

All assessments for 1951 and 1952 were paid.

The City contends that Section 10-87 (a) of the Richmond City Code, in effect in 1951 and 1952, makes the business of selling used motor vehicles taken in trade in the sale of new vehicles a business separate and apart from the business of selling the new vehicles. It claims that the purpose of the enactment of Section 10-87 was to reach the

various types of dealers in used motor vehicles and to distinguish them from dealers in new vehicles exclusively, and separate them from ordinary retail merchants. In support it relies on the history of Sections 10-84, 10-87, 10-122, 10-124 and 10-125 of its Code, and the general policy of the City in license taxation.

The Corporation, on the other hand, contends that, under the plain provisions of Section 10-87 (a), its business operations as a motor vehicle dealer in both new and used vehicles are assessable with but one license tax, that is, $200, plus a percentage of the gross receipts of its total business in excess of $52,941; and that the assessments made under Sections 10-84 and 10-87 (b) are, therefore, erroneous.

The trial court sustained the position taken by the Corporation for the reasons set out in a written opinion filed of record. It corrected the assessments and ordered the City to refund to Lynn Pontiac, Incorporated, the sum of $917.37, that being the difference between the total of the assessments found by the court to be erroneous and the amount of the proper assessments, as corrected by the court.

Article 4 of Chapter 10 of the Code of the City of Richmond, as amended, provides for and lists, generally or specifically, the various activities subject to license taxes within the City.

In 1951 and 1952, Section 10-84 of Article 4, relating to "Retail Merchants", substantially the same as the corresponding portion of Section 10.254 of the ordinance effective in 1950, reads as follows:

"10-84 MERCHANTS.—Retail.—(a) Every person engaged in the business of a retail merchant shall obtain a license for the privilege of doing business in the City of Richmond and shall pay a license tax therefor. The term 'retail merchant' as used in this section shall include every merchant who sells to others at retail only and not for resale.

"(b) For every license issued to a person engaged in the business of a retail merchant, the amount of the license tax to be paid therefor shall be equal to .........$20.00 and

thirty-four hundredths of one per centum of the gross receipts of the business."

The pertinent portions of Section 10.258 in effect prior to 1951 will be reviewed, in view of the contention of the City that the history of Section 10-87 and the policy of the City in license taxation support its claim that a dealer engaged in the business of selling new and used vehicles at different places is subject to be assessed two separate license taxes, one as a dealer in new vehicles only and another as a dealer in used vehicles only.

"10.258 MOTOR VEHICLE DEALERS.—(a) When used motor vehicles are taken by dealers in trade as a part of the sale price of such new vehicles, the sale price of such new vehicles, less the allowance made for such used vehicles, shall be considered as sales; and when such used or second-hand vehicles are sold at the place of business where such new vehicles are sold, the price received therefor shall be considered as sales irrespective of the value of parts in reconditioning such used vehicles and labor employed in installing the same.

"(b) Every motor vehicle dealer engaged in the business of selling or offering for sale new motor vehicles, and who sells or offers for sale used motor vehicles taken in trade in the sale of such new vehicles, at a place of business other than the place of business where such new vehicles are sold or offered for sale, shall pay a license tax equal to........ $200.00 and thirty-four hundredths of one per centum of the gross receipts of the business in excess of $52,941.00.

"(c) Every motor vehicle dealer engaged in the business of selling or offering for sale used or second-hand motor vehicles to others at retail only and not for resale exclusively, and does not engage in the business of selling or offering for sale new motor vehicles, shall pay a license tax equal to ..........$200.00 and thirty-four hundredths of one per centum of the gross receipts of the business in excess of $52,941.00."

Effective January 1, 1951, Section 10.258 was amended to read as follows:

"10.87 Motor Vehicle Dealers.—(Used Vehicles)—(a) Every motor vehicle dealer engaged in the business of selling or offering for sale new motor vehicles, and who sells or offers for sale used motor vehicles taken in trade in the sale of such new vehicles, at a place of business other than the place of business where such new vehicles are sold or offered for sale, shall pay a license tax equal to........$200.00 and thirty-four hundredths of one per centum of the gross receipts of the business in excess of $52,941.00.

"(b) Every motor vehicle dealer engaged in the business of selling or offering for sale used or second-hand motor vehicles to others at retail only and not for resale exclusively, and does not engage in the business of selling or offering for sale new motor vehicles, shall pay a license tax equal to ...........$200 and thirty-four hundredths of one per centum of the gross receipts of the business in excess of $52,941.00.

"(c) Every motor vehicle dealer engaged in the business of selling or offering for sale new and used motor vehicles, or both, at the same place of business, whether taken in trade or purchased for resale, shall pay a license tax of ...........$20.00 and thirty-four hundredths of one per centum of the gross receipts of said business.

"(d) When used motor vehicles are taken by dealers in trade as a part of the sale price of new or used vehicles, the sale price of such new or used vehicles, less the allowance made for such used vehicles, shall be considered as sales in computing gross receipts, and when such used or second-hand vehicles are sold, the price received therefor shall be considered as sales in computing gross receipts."

Section 10.258 provides two classifications of dealers in motor vehicles; those who sell new vehicles, and used vehicles taken in trade in a sale of new vehicles, at different places of business (Section 10.258 (b)); and those who sell or offer for sale used vehicles only (Section 10.258 (c)). The license tax is the same for each classification. There is no provision in this section which provides for the taxation

of dealers in new vehicles only, if any there be, or for those who sell new and used vehicles at the same place of business.

In 1950, the City assessed the Corporation, then a dealer in new and used vehicles at the same place, as a retail merchant, under Section 10.254, that is, with the sum of $20 and thirty-four hundredths of one per centum of the gross receipts of its business. Since thirty-four hundredths of one per centum of $52,941 amounts to $180, and the total gross receipts of Lynn Pontiac, Incorporated, for 1950, exceeded $52,941, it mattered not whether a single license tax was imposed on it in 1950 under Section 10.254, or under Section 10.258 (b). Under the latter section, the minimum entry fee was $200 and thirty-four hundredths of one per centum of the gross receipts of its business in excess of $52,941.

Section 10-87, effective in 1951, prescribes three classifications of motor vehicle dealers. It retained the two classifications set out in subsection (b) and (c) in former Section 10.258, identifying them as subsections (a) and (b) of the new section, and added a new classification under subsection (c),—dealers in "new and used motor vehicles or both," at the same location. There is no specific provision in Section 10-87 for the taxation of dealers in new vehicles only. We are told that it was the custom of the City to assess them as retail merchants.

In support of its contention that Section 10-87 provides for the taxation of dealers in used motor vehicles separately from dealers in new vehicles, the City relies upon the caption of that section, "MOTOR VEHICLE DEALERS.—(USED VEHICLES)".

A consideration of the whole of the context of the section negatives its contention. Section 10-87 establishes three classifications to cover every type of dealer in *used* motor vehicles, depending upon the nature and form of the operation; but the classifications are not confined to dealers in used vehicles only. Subsection (a) relates to dealers engaged in selling new and used vehicles at separate locations. Subsection (b) classifies dealers engaged in selling or offering

for sale used vehicles at retail only, without reference to place of business. Subsection (c) classifies dealers engaged in selling or offering for sale both new and used vehicles at the same place of business. Moreover, subsection (d) clearly relates to dealers in both new and used vehicles. In recognition of the peculiar situation of such dealers, it specifically provides that, "When *used* motor vehicles are taken by dealers in trade as a *part* of the *sale price* of *new* or *used* vehicles, the *sale price* of such *new* or *used* vehicles, less the allowance made for such used vehicles," shall be considered as gross receipts, and "when such used vehicles" are sold the price received therefor shall likewise be considered as sales in computing gross receipts. (Italics added.) The gross receipts of such dealers are not separated as to the source from which they are derived.

It is clear that Lynn Pontiac, Incorporated, does not come within the classification of subsections (b) and (c) of Section 10.87. It does not sell used vehicles exclusively, nor does it sell both new and used vehicles at the same place of business. It is a "motor vehicle dealer engaged in the business of selling or offering for sale new motor vehicles, and who sells or offers for sale used motor vehicles taken in trade in the sale of such new vehicles, at a place of business other than the place of business where such new vehicles are sold or offered for sale." Subsection (a) of Section 10-87 precisely describes the nature of its business, and it is the only section or subsection of the Richmond City Code which does so. Subsection (a) prescribes a classification which requires more than one place of business. It imposes a license tax not against the component parts of the dealer's business, nor upon his separate place of business. The tax is upon the gross receipts of the business of the dealer who comes within the classification of one who sells both new and used motor vehicles at different places. Gross receipts taxes are levied because of a business operation, and it is the gross receipts which are subject to the tax rate imposed upon the specific class of business.

Subsection (a) of Section 10-87 clearly provides a tax on the business of a dealer engaged in the sale of both new and used vehicles at different locations. It does not prescribe a tax on the dealer in new vehicles only, nor a tax on the dealer in used vehicles only. Had the City intended to assess the business of a dealer engaged in "selling used motor vehicles taken in trade in the sale of" new vehicles, "at a place of business other than the place of business where such new vehicles are sold" by that dealer, it should have provided that such dealer should pay a license tax equal to the prescribed entry fee and percentage of the gross *receipts derived from the said business of selling such used motor vehicles.*

We are in accord with the opinion of the trial judge that the motor vehicle business operations of Lynn Pontiac, Incorporated, are, under Section 10-87 (a), assessable under one license tax. Since the Corporation, because erroneously assessed under Sections 10-84 and 10-87 (b), has paid license taxes amounting to $6,452.64 for 1951 and 1952, and should have been required to pay, under correct assessments, under Section 10-87 (a), $2,927.49 for 1951 license, and $2,607.78 for 1952 license, a total of $5,535.27, it is entitled to a refund of the difference amounting to $917.37.

The City of Richmond contends that the foregoing application of Section 10-87 (a) results in a nullification of Sections 10-124 and 10-125 of its Code. We do not think so.

The selling of new and used motor vehicles may be considered as a single business or as separate businesses. This is shown by the provisions of Section 10-87. In subsection (a) the selling of both new and used cars is treated as *a business* and *not as separate businesses.* It places a license tax on the receipts of the *business* of a "motor vehicle dealer *engaged in the business of selling or offering for sale new motor vehicles, and who sells or offers for sale used motor vehicles* taken in trade in the sale of such new vehicles, at a place of business other than the place of business where such new vehicles are sold." Subsection (c) treats the combined operations as a

single *business* and taxes it as such. Subsection (b) treats the selling of used vehicles as a single business. Subsections (a) and (c) provide a condition as to place of location of the business; but that is merely a condition under which the tax is prescribed. The tax is on the business and not on the place where the business is operated. Dealers who come within the respective classifications are taxed but one rate for the respective type of their business.

Section 10-124[1] provides that carrying on the same business at two different locations is in effect the carrying on of two separate businesses for the purpose of taxation," *unless expressly authorized elsewhere or otherwise by law.*"

Since subsection (a) of Section 10-87 expressly authorizes the operation of a business at more than one location, and as we have concluded, under one license tax, the business of Lynn Pontiac, Incorporated, comes within the exception of Section 10-124, and that section is not applicable here.

Section 10-125[2] provides that carrying on two or more *businesses* at a single place of business subjects each business to separate license taxation, unless the tax rate on each busi-

---

[1] "10-124 DESIGNATION OF PLACE OF BUSINESS—Every license to engage in any business, occupation or profession unless expressly authorized elsewhere or otherwise by law, shall designate the place of such business, occupation or profession at some specified house or other definite place within the City of Richmond. Engaging in any such business, occupation or profession elsewhere than at such house or definite place, unless expressly authorized elsewhere or otherwise by law, shall constitute a violation of the provisions of this chapter. * * * "

[2] "10-125 PERSONS ENGAGED IN MORE THAN ONE TRADE, BUSINESS, OCCUPATION OR PROFESSION.—Every person engaged in more than one business, occupation or profession in the City of Richmond for which license taxes are prescribed by this chapter at more than one rate or at different entry fees shall be assessed with and shall pay the license tax prescribed for the respective businesses. Where a person engages in two or more of such businesses, occupations or professions at a single place of business, each of which such business is subject to the same entry fee and is taxable at the same rate on the gross receipts thereof, only one entry fee shall be paid with respect to them and the gross receipts of such businesses, occupations, or professions shall be consolidated, computed and reported as one item, and only one license tax shall be computed thereon; but the license receipt shall show the respective businesses, occupations and professions that are covered by the consolidated tax."

ness is the same. Since Lynn Pontiac, Incorporated, is engaged in a single business authorized to be conducted at more than one place and only one tax is prescribed for that business, Section 10-125 has no application here.

Having reached the foregoing conclusions, it is unnecessary to consider the provisions of Section 10-122, which provide the measure of the tax to be assessed against a person beginning a business, occupation or profession.

We find no error in the order of the trial court, and it is accordingly affirmed.

*Affirmed.*